UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREYSTONE MULTI-FAMILY BUILDERS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-921 |
| | § | |
| GEMINI INSURANCE COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a Memorandum and Recommendation ("M&R") filed by the Magistrate Judge. Dkt. 36. She recommends that the court grant in part and deny in part motions for summary judgment or partial summary judgment filed by plaintiff Greystone Multi-Family Builders, Inc. ("Greystone") (Dkt. 16) and defendant Gemini Insurance Company ("Gemini") (Dkt. 17). *Id.* Greystone has filed an opposed motion for clarification in which it seeks clarification on whether its motion for partial summary judgment is granted in part or fully granted (Dkt. 37), and both parties have filed objections to the M&R (Dkts. 38, 39). After reviewing the original motions and related filings, the M&R, the objections and related filings, the motion for clarification, and applicable law, the court is of the opinion that the M&R should be ADOPTED IN PART, Greystone's objections should be SUSTAINED IN PART and OVERRULED IN PART, Gemini's objections should be OVERRULED, and Greystone's motion for clarification should be DENIED AS MOOT.

### I. BACKGROUND

This is a duty-to-defend lawsuit arising out of the alleged breach of a construction contract. Dkt. 36 (citing Dkt. 1). Greystone entered into a contract with TPG (Post Oak) Acquisition, LLC

("TPG") to perform services as a general contractor on a construction project. Dkt. 1. It did not fully perform its obligations under the contract, and it asserts that this failure was based in part on TPG's failure to make timely payments. *Id.* TPG eventually terminated the construction contract and hired Allied Realty Advisors ("Allied") to complete the construction. *Id.* Greystone sued TPG and Allied in state court. *Id.* TPG filed a counterclaim against Greystone and alleged that Greystone breached the construction contract. *Id.* When requested, Gemini denied coverage to Greystone, asserting that it was not obligated to indemnify or defend Greystone for property damage that occurred while Greystone was performing operations and for property damage caused by mold. *Id.* In response to Greystone's second request, Gemini took the position that it had no duty to defend or indemnify Greystone because Greystone never completed its work and the property damage alleged therefore occurred during Greystone's operations. *Id.* Greystone contends that TPG's claims in the underlying suit satisfy the requirements under the insurance policy for coverage and that none of the exclusions relied upon by Gemini operates to negate all potential coverage under the policy. *Id.* Greystone thus initiated this lawsuit against Gemini alleging (1) breach of contract; and (2) failure to timely provide a defense as required by the Texas Insurance Code. *Id.* Greystone seeks attorneys' fees and a declaratory judgment stating that Gemini has a duty to defend in the underlying lawsuit. *Id.*

Greystone filed a motion for partial summary judgment. Dkt. 16. Greystone sought an order finding that Gemini breached the insurance policy by failing to defend Greystone in the underlying case, Greystone is entitled to recover its defense costs and expenses in the underlying lawsuit, and Greystone is entitled to recover 18% penalty interest and attorneys' fees incurred pursuing Gemini pursuant to the Prompt Payment of Claims Act. *Id.*

Gemini filed a motion for summary judgment in which it argued that the counterclaims in the underlying case do not allege a covered occurrence and, alternatively, that certain exclusions in the policy preclude any duty to defend. Dkt. 17.

The Magistrate Judge issued an M&R in which she made recommendations regarding both motions. Dkt. 36. The M&R sufficiently set forth all of the relevant policy provisions, and the court incorporates the portion of the M&R entitled "The Insurance Policy" into this order. The M&R also set forth relevant portions of the first amended counterclaim in the underlying case in the portion of the M&R entitled "The Underlying Lawsuit (the 'Underlying Action')." *Id.* The court also incorporates this portion of the M&R into this order.

## II. LEGAL STANDARD

A party may file objections to an M&R on a dispositive motion within fourteen days of being served with a copy of a written order. Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1)(C). The district court judge then "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

## III. ANALYSIS

The Magistrate Judge correctly stated and applied the summary judgment standard, and the court need not restate it here. This order will instead discuss each objection and whether the court should accept or reject the Magistrate Judge's recommendations as they relate to each objection.

**A.    "Occurrence"**

Gemini objects to the Magistrate Judge's determination that the allegations in the underlying complaint are an "occurrence" under the Policy. Dkt. 38 at 2. In its motion for summary judgment,

3

Gemini argued that the counterclaims in the underlying case do not allege an "occurrence" under the policy and, as such, since the policy only covers property damage caused by an "occurrence," Gemini has no duty to defend Greystone. Dkt. 36 at 17 (discussing the parties' arguments). Gemini specifically contended that an "occurrence" must be an "accident" and the allegations do not support a finding that Greystone's actions were an accident or occurrence. *Id.* The Magistrate Judge considered a Texas Supreme Court case interpreting a contract with language almost identical to the policy that found that "'a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury . . . or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not.'" *Id.* at 18 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 4–5, 7 (Tex. 2007)). The Magistrate Judge then considered the allegations in the underlying counterclaim and determined that there was no allegation that Greystone intended its work to cause the damage or that the damage was the natural and expected result of Greystone's actions and that the allegations thus fall under the definition of "occurrence." *Id.* at 20. She took note of the "argumentative statements in the counterclaim that it was 'not surprising' that the work was mediocre due to the timing of payments" but determined that these statements were not sufficient for a conclusion that Greystone's conduct was intentional or that the alleged damages were the natural and expected result of Greystone's actions. *Id.*

The main issues Gemini highlights in the counterclaim to support its contention that the events outlined in the counterclaim do not qualify as an "occurrence" are the allegations that Greystone hid costs so that it could continue to collect its contractor's fees, paid subcontractors up front so that it could collect higher contractor's fees resulting in lower incentive for them to complete

4

their work, and withheld information from TPG, all of which Gemini contends resulted in predictably poor workmanship. *Id.* at 19.

Under the policy, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 17, Ex. C. Both parties relied primarily on *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W.3d 1 (Tex. 2007) to support their arguments with regard to "occurrence." *See* Dkts. 17, 31. In *Lamar Homes*, the Texas Supreme Court held that "a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury . . . or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, it was highly probable whether the insured was negligent or not." 242 S.W.3d at 9. The court noted that the "determination of whether an insured's faulty workmanship was intended or accidental is dependent on the facts and circumstances of a particular case." *Id.* In this case, Greystone contended that there was not any allegation in the counterclaim that Greystone intended the defective work or resulting damage and that, while the counterclaim asserts Greystone intended deficiencies, this does not mean it intended for any damage to occur. Dkt. 31. Gemini argued that the counterclaim indicates the injury was the "predictable result" of Greystone's actions. Dkt. 17.

The court has reviewed the counterclaims and agrees that the inflammatory language highlighted by Gemini may lead one at first glance to conclude that the alleged damages were the "natural and expected result" of Greystone's actions. For instance, the counterclaim states that it was "not surprising" that the subcontractors failed to complete work after Greystone paid them in advance, and that the "predictable result of these management failure . . . was that the work performed on the Project has been besought with deficiencies." Dkt. 16, Ex. B. However, when one reviews the entire counterclaim, it becomes clear that many of the alleged damages were not

5

predictable based on Greystone's alleged mismanagement. For instance, the framing subcontractor allegedly failed to construct frames with the required amount of studs, often using only one when the plans called for two or three; Greystone installed power conduits under the building's garage and these were later lost or destroyed when concrete was poured over them; the masonry subcontractor installed the trash-chute walls without leaving access to install the trash chutes, which required retrofitting of the doors; Greystone builders "forgot to install" pipe; and the emergency exit door was literally installed backwards. *Id.* Because many of these deficiencies were clearly not the "natural and expected result" of Greystone's alleged mismanagement, the court finds that the Magistrate Judge correctly determined that some of the allegations in the counterclaim fall under the definition of "occurrence." Gemini's objection to this finding is OVERRULED.

B.    **"Property Damage"**

Gemini objects to the Magistrate Judge's recommendation that the court find that the counterclaims alleged "property damage" in the form of "loss of use." Dkt. 38 at 3. The Magistrate Judge noted that the definition of "property damage" in the policy is "'[p]hysical injury to tangible property' including loss of use and '[l]oss of use of tangible property that is not physically injured.'" Dkt. 36 at 21 (citing Dkt. 16-3, Ex. C). Gemini agreed that there was some property damage but argued that there was no loss of use caused by the property damage because there is no indication that TPG had any intention of actually operating the apartment complex. Dkt. 36 at 21–22 (citing Dkt. 17). The Magistrate Judge found that there were allegations in the underlying case that Greystone's work caused property damage and cited specific examples. *See id.* at 22. She reasoned that the argument regarding whether there was an intention to operate the apartments was "misplaced" because it was "clear [from the allegations] that TPG intends to finish the project and lease the apartments." *Id.* at 23.

6

Gemini objects to the Magistrate Judge's findings, asserting that the items the Magistrate Judge identified as "loss of use" were simply allegations that the completion of the project was delayed. Dkt. 38 at 3. It points out that the "use" of an apartment complex is to charge rent, and there is no allegation in the underlying case of lost rent. *Id.* at 4. Instead, the counterclaim alleges construction delays that caused non-monetary defaults on the construction and mezzanine loans. *Id.* Gemini contends that a delay does not equate to "loss of use" and the delay here relates only to the costs of construction and the parties' contractual rights. *Id.* Additionally, it points out that the counterclaim specifically alleges that the apartment complex remains unfinished and thus has never even been in "use."*Id.*

The policy defines "Property damage" as follows:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

Dkt. 16-3 at 15. After examining this definition, which clearly begins with "[p]hysical injury to tangible property," the court agrees with the Magistrate Judge's finding that some of the damages alleged in the counterclaim, such as damage to structural elements of the project, fall within the definition of "Property damage" and do not relate solely to breach of the construction contract. Additionally the court agrees with the Magistrate Judge's determination that the end-goal was to complete the project and use the property as an apartment complex and that this use was lost due to delays. *See* Dkt. 16-4 at 3 (discussing how the construction project was for the development and construction of land "for *use* as a residential apartment building"); *id.* at 4 (stating that TPG intended to develop, construct, own, lease, and operate a residential apartment project). Gemini's objection

7

to the Magistrate Judge's findings regarding "Property damage" and "loss of use" are OVERRULED.

**C.      Exclusions**

**1.       j(5)**

Gemini objects to the Magistrate Judge's recommendation that the court find that exclusion j(5) does not preclude a duty to defend.  Dkt. 38.  Exclusion j(5) is included in the business risk exclusions and excludes coverage for "property damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."  Dkt. 36 at 4–5 (quoting Dkt. 16-3 at 9–10).  The Magistrate Judge relied primarily on *Mid-Continent Casualty Co. v. JHP Development, Inc.*, 557 F.3d 207, 213 (5th Cir. 2009), in which the Fifth Circuit determined the j(5) exclusion in an identical policy "makes clear that the exclusion only applies to property damage that occurred during the performance of construction operations."  The Magistrate Judge found that "there is no clear language in the Counterclaim tying the property damage to a particular date" and the "Counterclaim does not define [whether] this damage occurred while Plaintiff was still working on the project or after its contract with TPG was terminated."  Dkt. 36 at 26.  She pointed out that the court "may not read additional facts into the underlying pleading or speculate on various scenarios, even in its search for potential coverage."  *Id.*  She also noted that the court "'must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the intent.'"  *Id.* at 27 (quoting *Mid-Continent Cas. Co.*, 557 F.3d at 215).  Because there is a fact question as to when the damage occurred and the court cannot read

facts into the complaint that are not alleged, the Magistrate Judge recommends finding that exclusion j(5) does not allow Gemini to escape the duty to defend. *Id.* at 27.

Gemini argues that the exclusion applies to work by both Greystone and any contractors or subcontractors working on its behalf and the counterclaim specifically alleges that the construction deficiencies resulted from Greystone's mismanagement of the project as a whole and that any "property damage" arose out of those operations in that "they would not have happened but for those operations." Dkt. 38 at 5. Additionally, Gemini asserts that it is clear from the counterclaims that the "property damage" alleged forms the basis of TPG's decision to terminate Greystone, so, logically, it began while Greystone or its subcontractors were performing operations. *Id.*

Greystone responds that the fact that it was working on the entire project does not mean that the exclusion applies because the phrase "that particular part" narrows the scope of the exclusion so that it only applies to negate coverage for the specifically defective work that is damaged and does not negate coverage for damage to non-defective work. Dkt. 40 at 8 (citing *Mid-Continent Cas. Co.*, 557 F.3d at 213). As far as the allegation that the damage logically occurred while Greystone or its subcontractors were performing operations, Greystone notes that Gemini does not cite to a single factual allegation in the counterclaim that states when the damages at issue occurred. *Id.*

The court agrees with the Magistrate Judge's findings on these issues. The exclusion itself applies to damage that occurred while Greystone or its subcontractors were working. Damages alleged include plumbing elements being cracked because the floor of the structure began to sag, water leaks due to improperly installed roofing systems, and leaks due to plaster and masonry being installed improperly. Dkt. 16 at 18-19 (citing Dkt. 16, Ex. A (original counterclaim)). While the counterclaim does not state when these damages occurred, they could have occurred while Greystone and its subcontractors were working or after the contract was terminated. Certainly, Gemini is

9

correct that it appears some of the damage alleged occurred during the performance of construction operations, but a review of the counterclaim demonstrates that some of the alleged damage could have occurred when there were no active operations. The exclusion "applies only to damage caused during active physical construction activities." *Mid-Continent Cas. Co.*, 557 F.3d at 213.

Gemini also urges the court to allow limited discovery to resolve the factual question of when the property damage took place, citing *Northfield Insurance Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004). In *Northfield*, the Fifth Circuit noted that the Texas Supreme Court had not recognize any exceptions to the strict eight corners rules, but that various federal district courts, certain Texas appellate courts, and the Fifth Circuit had appeared to recognize a narrow exception. 363 F.3d at 529. The court discussed cases in which these courts had found that "where fundamental policy coverage questions can be resolved by readily determined facts that do not engage the truth or falsity of the allegations in the underlying petition, or overlap with the merits of the suit," extrinsic evidence may be examined. *Id.* However, the Fifth Circuit then made an *Erie* guess that "the current Texas Supreme Court would not recognize any exception to the strict eight corners rule." It stated, however, that "in the unlikely situation that the Texas Supreme Court were to recognize an exception to the strict eight corners rule, we conclude any exception would only apply in very limited circumstances: when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id.* at 531.

Soon thereafter, the Texas Supreme Court was faced with an argument that it should recognize such an exception, and it cited the Fifth Circuit's *Northfield* opinion with approval. However, the case did not fit the potential exception, so it did not need to recognize the exception.

10

*See Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006) (discussing *GuideOne Ins. Co. v Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). While the Texas Supreme Court has not had a case in which the exception applies, Texas appellate courts continue to treat its discussion of the exception and the Fifth Circuit's *Erie* guess as an indication that the court would recognize the *narrow* exception in the right case. *See Allstate Cty. Mut. Ins. Co. v. Wootton*, 494 S.W.3d 825, 835–36 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

If there is a narrow exception, it only applies if (1) it is impossible to determine whether coverage is potentially implicated; and (2) the extrinsic evidence goes solely to a fundamental issue of coverage that does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case. *Id.* (quoting *Liberty Mut. Ins. Co.*, 473 F.3d at 600–01). Gemini asserts that engaging in discovery to determine when the damage occurred does not implicate the truth or falsity of the facts alleged since the counterclaim itself does not state when the damage occurred. Dkt. 38 at 6. However, in this case, discovery relating to when the damages occurred necessarily implicates whether the alleged defects were caused, as alleged in the underlying amended complaint, by Greystone. Thus, the discovery relating to timing would necessarily overlap with the merits. The the narrow exception to the eight-corners rule does not apply.

Gemini's objections to the Magistrate Judge's recommendation with regard to exclusion j(5) are OVERRULED.

**2.     j(6)**

Gemini next objects to the Magistrate Judge's recommendation to find that exclusion j(6) does not apply. Dkt. 38. The Magistrate Judge found that the products-completed operations hazard was inapplicable in this case and that exclusion j(6) does not bar coverage to the extent that the counterclaim alleges that non-defective work was damaged by defective work. Dkt. 36 at 30–31.

11

Exclusion j(6) excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Dkt. 16-3 (policy). Under the Policy, this exclusion does not apply to "'property damage' included in the 'products-completed operations hazard.'" *Id.* "Products-completed operations hazard" means, in relevant sum, property damage occurring away from the premises and arising out of the work and does not include damage arising out of the existence of tools, uninstalled equipment, or abandoned or unused materials. *Id.* In interpreting this exclusion, the Fifth Circuit has held that "exclusion j(6) bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property." *Mid-Continent*, 557 F.3d at 215.

Gemini objects that the Magistrate Judge determined that the exclusion does not bar coverage to the extent the counterclaim alleges that non-defective work was damaged by defective work because the entire project was Greystone's "work," even if it was performed by subcontractors, and the counterclaim states that the damages were the "predictable result" of Greystone's intentional and self-serving project management decisions. Dkt. 38 at 7. Gemini contends that because Greystone's work was allegedly performed incorrectly on the project as a whole, any property that must be restored, repaired, or replaced, which is all the alleged property damage, falls within the exclusion. *Id.* at 8. Greystone points out that the Fifth Circuit has limited the scope of coverage of this exclusion so that it only applies to damaged property that is the subject of the alleged defective work. Dkt. 40 at 11. Additionally, it argues that not all of the alleged property damage is to Greystone's work as the Magistrate Judge noted that Greystone is alleged to have caused damage to neighboring third-party property on which Greystone did not work. *Id.* at 12.

12

The court agrees with the Magistrate Judge that the exclusion does not bar coverage to the extent that the counterclaim alleges that non-defective work was damaged by defective work. Dkt. 36 at 31. Gemini's objection to the Magistrate Judge's recommendation with regard to exclusion j(6) is OVERRULED.

### 3. Fungus or Spore Exclusion

The Magistrate Judge found that while the fungus or spore exclusion, which was added to the Policy by endorsement, precludes coverage for some of the counterclaims that discuss mold problems, this does not prevent Gemini from defending the lawsuit for the counterclaims that do not involve mold. Dkt. 36 at 32. The fungus or spore exclusion indeed precludes coverage of claims for property damage caused by a fungus or spore, and mold is included in the definition of fungus. Dkt. 16-3. Additionally, the counterclaim clearly contains allegations that some of the alleged property damage was caused by a mold infestation. Dkt. 16-2. Gemini objects to the Magistrate Judge's recommendation with regard to this exclusion, arguing that the Fungus and Spore exclusion, in concert with the other policy exclusions, precludes a duty to defend. Dkt. 38. Greystone responds that Gemini failed to raise any factual or legal issues with regard to this recommendation and, as such, it should be overruled. Dkt. 40.

The court agrees with the Magistrate Judge that while the Fungus and Spore Exclusion may preclude coverage for some of the counterclaims, it does not preclude Gemini from having a duty to defend the lawsuit since it does not cover all of the counterclaims. Gemini has not shown that this exclusion in combination with other exclusions preclude the duty to defend all of the counterclaims. Gemini's objection with regard to the Fungus and Spore Exclusion is OVERRULED.

4. **Exclusion m**

The Magistrate Judge determined that Gemini did not meet its burden with regard to its request that the court apply Exclusion m. Dkt. 36 at 33. Exclusion m relates to damage to impaired property or property not physically injured. Dkt. 16-3. In its objections, Gemini argues that to "the extent that any 'loss of use' property damage is alleged, which is denied, coverage for same is precluded by exclusion m." Dkt. 38 at 8. Greystone asserts that Gemini failed to attempt to establish its burden that the exclusion applies and, regardless, no allegations of damage to "impaired property" exist. Dkt. 40. The court agrees that Gemini has not shown that the exclusion should apply. Its objection is OVERRULED.

**D. Prompt Payment of Claims Act**

The Magistrate Judge recommends that summary judgment be granted in favor of Greystone on its Prompt Payment of Claims Act claim and that damages be determined at a later date. Dkt. 36 at 34. She noted that the Act applies "'when an insurer wrongfully refuses to promptly pay a defense benefit owed to the insured.'" *Id.* (quoting *Lamar Homes*, 242 S.W.3d at 20). Gemini takes issue with the recommendation that the court grant Greystone's request for summary judgment on its claim for 18% interest under the statute because Greystone failed to establish a breach of contract, failed to establish damages, and failed to provide any evidence of the date of tender of the claim to Gemini. Dkt. 38 at 9. Greystone argues that Gemini's objection is premature because it specifically requested *partial* summary judgment and did not submit evidence of the amount of damages so that the parties would have a chance to negotiate the amount. Dkt. 40 at 13–14.

The court agrees that Greystone merely asked the court to determine that the defendant breached this statute by failing to defend. And the court finds it is appropriate to grant summary judgment on the Prompt Payment of Claims Act claim and reserve a determination of the amount

of damages until a later date. *See Trammell Crow Residential Co. v. Va. Sur. Co, Inc.*, 643 F. Supp. 2d 844, 859 (N.D. Tex. 2008) ("In other words, there can be a determination of liability without a calculation of damages," which "is consistent with *Lamar Home*'s holding and the Prompt Payment of Claims Act." (citing *Lamar Homes*, 242 S.W.3d at 20)). The Texas Supreme Court has found, in discussing the Prompt Payment of Claims Act, that "when the insurer wrongfully rejects its defense obligation, the insured has suffered an actual loss that is quantified after the insured retains counsel and begins receiving statements for legal services." *Lamar Homes*, 242 S.W.3d at 19. Gemini's objections to the Magistrate Judge's recommendation on the Prompt Payment of Claims Act claim are OVERRULED.

E.     **Breach of Contract**

The Magistrate Judge found that Gemini breached its duty to defend. Gemini argues that the M&R incorrectly recommends that the court grant Greystone's request for summary judgment on its breach of contract claim when Greystone has not proven it had damages—an essential element of a breach of contract claim. Dkt. 38 at 8. Greystone reiterates that it is only seeking partial summary judgment and requested damages be considered after the legal issues—whether Gemini had a duty to defend and breached that duty—were resolved. Dkt. 40 at 13. The court agrees with the Magistrate Judge's finding that Gemini breached its duty to defend. The Magistrate Judge did not expressly rule on the breach of contract claim. Generally, a litigant "must show that it suffered some damages to satisfy [the damages] element" of a breach of contract claim. *Trammell Crow Residential Co.*, 643 F. Supp. 2d at 856. However, since there is no express ruling on the breach of contract claim and only a ruling that Gemini breached its duty to defend, Gemini's objection is OVERRULED.

F.  Miscellaneous Objections

Gemini also asserts some objections to the factual statements in the M&R. Dkt. 38. It contends that (1) the M&R incorrectly describes the underlying lawsuit as involving only two litigants when it actually involves multiple litigants and agreements and thus does not fully provide the context for understanding how Greystone "deliberately managed the project so as to hide cost overruns and thereby maximize its Contractor Fee"; and (2) the M&R's paraphrasing of the allegations in the counterclaims as being "shoddy workmanship" is incorrect as that phrase is not used in the counterclaims and the M&R should have highlighted the "explicit allegation of causality within the Counterclaims that the construction deficiencies were the 'predictable result'" of Greystone's "self-serving project management decisions." *Id.* The court takes note of these objections and has reviewed the allegations in the underlying lawsuit to make the determinations in this memorandum and order.

The counterclaim indeed involves numerous parties, though the crux of the dispute, upon which the M&R focuses, is a construction contract between Greystone and one entity – TPG. *See* Dkt. 16-2 ¶ 1 ("This dispute arises from the wholesale failure of Greystone Builders to properly construct Work under its Construction Contract with TPG . . . to build a luxury apartment complex in the Galleria area."). While certainly the counterclaim discusses additional agreements and parties, they all relate to the alleged breach of the main construction contract. Thus, while certainly the entirety of the underlying dispute is complicated, there is no need to set forth the substance of every alleged agreement and the alleged breaches of those agreements in the factual background of the M&R.

Gemini also complains that the M&R should not have paraphrased allegations in the counterclaim as being "shoddy workmanship" because, essentially, it contends the counterclaim

16

alleges intentional conduct on the part of Greystone. While the court understands Gemini's argument, one may correctly characterize the allegations about Greystone's work as being "shoddy workmanship" even if such shoddy workmanship was the "predictable result" of self-serving project management decisions. "Shoddy" means "of poor quality or inferior workmanship" or "made or done without care." *See Shoddy*, Dictionary.com, www.dictionary.com/browse/shoddy (last visited Mar. 28, 2018); *Shoddy*, Cambridge Dictionary, https://dictionary.cambridge.org/us/ dictionary/english/shoddy (last visited Mar. 28, 2018). Certainly some of the allegations in the underlying complaint deal with allegations that Greystone's work or the work of its subcontractors was of poor quality or done without care.

These objections are OVERRULED.

**G.      Greystone's Objections and Motion for Clarification**

Greystone objects to the M&R because (1) the M&R recommends that its motion for partial summary judgment be granted in part and denied in part, but it does not appear to deny any portion of the motion; and (2) the M&R recommends that Gemini's motion for summary judgment be granted in part and denied in part, but it doe not appear to grant any portion of Gemini's motion. Dkt. 39. Greystone's motion for clarification is based on these same arguments. Dkt. 37. Greystone points out that the Magistrate Judge only found that a single exclusion applies but that this exclusion did not negate the duty to defend because other claims existed to which that exclusion did not apply. Dkt. 39. It requests that the court adopt the reasoning in the M&R but enter an order sustaining their objections, grant their motion for partial summary judgment in its entirety, deny Gemini's motion in its entirety, and order the Gemini has a duty to defend Greystone in the underlying lawsuit and that Gemini violated the Prompt Payment of Claims Act. *Id.*

Greystone's motion for summary judgment sought an order that "(I) Gemini breached its Wrap-Up Policy by failing to defend Greystone in the Underlying Lawsuit; (ii) therefore, Greystone is entitled to the recovery of its defense costs and expenses incurred in the Underlying Lawsuit; and (iii) Greystone is entitled to recovery of 18% penalty interest and attorneys' fees incurred in pursuing Gemini, as allowed by statute under the Prompt Payment of Claims Act, or, in the alternative an award of attorneys' fees under the Civil Practice and Remedies Code." Dkt. 16. The Magistrate Judge recommended that the court hold that (1) Gemini breached its duty to defend; (2) Gemini violated the Prompt Payment of Claims Act. Since there is no express ruling on the breach of contract claim and Greystone provided no argument regarding the damages element of its breach of contract claim such that the court may now rule on the issue, the recommendation that the motion be granted in part and denied in part is correct.

With regard to Gemini's motion, Gemini stated the issue to be decided was whether Gemini had a duty to defend with the subissues being (1) whether Greystone alleges an "occurrence"; and (2) whether the policy exclusions preclude a duty to defend. Dkt. 17 at 1. The Magistrate Judge recommended that the court find that there is a duty to defend because Greystone alleged an "occurrence" and that while one of the exclusions applies, the exclusions do not preclude a duty to defend. Dkt. 36. Her recommendations thus indicate that Gemini's motion should be denied in full.

Greystone's objections (Dkt. 39) are thus SUSTAINED IN PART and OVERRULED IN PART. The court will grant in part and deny in part Greystone's motion and completely deny Gemini's motion. Greystone's motion for clarification (Dkt. 37), which seeks clarification of the M&R on these issues, is DENIED AS MOOT.

## IV. Conclusion

The M&R (Dkt. 36) is ADOPTED IN PART in accordance with the analysis in the memorandum and order. Greystone's objections (Dkt. 39) are SUSTAINED IN PART and OVERRULED IN PART. Gemini's objections (Dkt. 38) are OVERRULED. Gemini's motion for summary judgment (Dkt. 17) is DENIED. Greystone's motion for summary judgment (Dkt. 16) is GRANTED IN PART AND DENIED IN PART. It is DENIED to the extent that Greystone seeks summary judgment on its breach of contract claim. The court finds that Gemini has a duty to provide a defense for Greystone in the underlying action and that Gemini violated the Prompt Payment of Claims Act by failing to do so. The damages under the Prompt Payment of Claims Act shall be determined at a later date to be determined by the Magistrate Judge. Additionally, leave is hereby GRANTED for Greystone to file an additional motion for summary judgment on the narrow issue of damages for its breach of contract claim, but it must do so within twenty (20) days of the date of this order.

Greystone's motion for clarification (Dkt. 37) is DENIED AS MOOT.

Signed at Houston, Texas on March 30, 2018.

_____
Gray H. Miller
United States District Judge